| | AUSA: | Matthew Roth | Telephone: (313) 226-9100 |
|---|---|---|---|
| AO 106 (Rev. 04/10) Application for a Search Warrant | Task Force Officer: | Troy Williams | Telephone: (313) 202-3400 |

# UNITED STATES DISTRICT COURT

for the
Eastern District of Michigan

Case: 2:20−mc−50543
Assigned To : Friedman, Bernard A.
Assign. Date : 5/6/2020
Description: RE: SEALED MATTER (EOB)

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

17834 Dresden, Detroit, Michigan 48205
(more fully described in Attachment A)

Case No.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the _____Eastern_____ District of _____Michigan_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- [✓] evidence of a crime;
- [✓] contraband, fruits of crime, or other items illegally possessed;
- [✓] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 922(g)(1) | Felon in possession of a firearm |

The application is based on these facts:

See attached AFFIDAVIT.

- [✓] Continued on the attached sheet.
- [ ] Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Troy Williams, Task Force Officer (ATF)
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _____May 6, 2020_____

_____
*Judge's signature*

City and state: ___Detroit, Michigan___

Hon. David R. Grand,  U. S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF THE
SEARCH OF 17834 DRESDEN
STREET, DETROIT, MICHIGAN
48205

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Troy Williams, being first duly sworn, hereby depose and state as follows:

## I.   INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 17834 Dresden Street, Detroit, Michigan 48205, hereinafter "Target Premises," further described in Attachment A, for the items described in Attachment B.

2.     I am a police officer with the Detroit Police Department and have been since May of 2016. I am currently assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives Detroit Field Division as a Task Force Officer. I am certified under the Michigan Commission on Law Enforcement Standards requirements. In addition, I successively

completed the criminal justice undergraduate program, earning a bachelor's degree, from Wayne State University.

3.    Prior to working with the ATF, I was assigned to the Detroit Police Department's Gang Intelligence Unit. During my employment with the Detroit Police Department, I have conducted and/or participated in numerous criminal investigations focused on firearms, drug trafficking violations, and criminal street gangs.

4.    This affidavit is intended to show probable cause for the requested warrant and does not set forth all of the information known to law enforcement regarding this investigation.

5.    I am currently conducting a criminal investigation concerning Marcus ROBINSON (DOB: XX/XX/1992), Deshawn TARVER (DOB: XX/XX/1983) and Hosea ALEXANDER (B/M/1987) for violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) among other state and federal criminal violations. Probable cause exists that evidence related to that offense and others is located inside of the Target Premises.

-2-

## II.    PROBABLE CAUSE

6.    I queried the Michigan Law Enforcement Information Network (LEIN) regarding ROBINSON. The query revealed a Michigan Secretary of State (SOS) photograph and the following criminal convictions:

    a.    June 2011 - attempt - felony carrying a concealed weapon, Third Judicial Circuit for Michigan, Detroit; and

    b.    March 2017 - felony possession of a controlled substance less than 25 grams and felony possession of a controlled substance (analogues), Sixteenth Judicial Circuit for Michigan, Macomb County.

7.    I queried the Michigan Law Enforcement Information Network (LEIN) regarding TARVER. The query revealed a SOS photograph and the following criminal convictions:

    a.    August 2019 - felony-weapons carrying concealed, Third Judicial Circuit of Michigan, Detroit; and

    b.    TARVER is currently under probation with the Michigan Department of Corrections (MDOC).

8.     I queried the Michigan Law Enforcement Information

Network (LEIN) regarding ALEXANDER. The query revealed a SOS

photograph and the following criminal convictions/charges:

    a.    July of 2014 - felony second degree home invasion; and

    b.    Charges pending in the Third Judicial Circuit for Michigan, Detroit, for felon in possession of a firearm, felon in possession of ammunition, and felony weapons carrying concealed.

## III.   SOCIAL MEDIA

A.    <u>Instagram User ID "48205jizzle"</u>

9.     In April 2020, I reviewed an Instagram Profile associated

with Instagram User ID: "48205jizzle." I reviewed posted "stories"

images, and videos. An Instagram story allows people to share

"moments" of their day quickly and easily. These could be in the form of

a series of photos or videos. Everything put together for a story becomes

a slideshow on Instagram.

10.    I compared the apparent user of the account with

ROBINSON's SOS image and identified ROBINSON as the user of the

48205jizzle account. I base this conclusion on the captions posted from

the account and the selfie-style images and videos posted. Images 1 and 2 below are representative images posted from the 48205jizzle account associated with ROBINSON. In Image 1, ROBINSON posed with cash and bowls filled with (apparent) marijuana. In Image 2, ROBINSON held a large stack of cash.

Image 1                              Image 2

    

11.     On December 4, 2019, Instagram User ID 48205jizzle posted Image 3. Image 3 depicted ROBINSON with what appears to be an AK47 style pistol with a wooden grip, commonly referred to as a "Draco." The image is captioned, "WOAH!! #LongLiveLitho #SCE."

<u>Image 3</u>



12.     On April 1, 2020, Instagram User ID 48205jizzle posted a series of Instagram stories that depicted several individuals, including ROBINSON, in possession of firearms. The images were taken inside a residence with orange walls, a gray couch, and a large mirror that took up an entire wall. I used several investigative law enforcement methods to identify the individuals present within the Instagram story.

-6-

13.     Images 4, 5, 6, and 7 are still shots of the Instagram story.

Image 4 depicted ROBINSON in possession of an AK-47 style pistol

with a wooden grip. Image 5 depicted TARVER in possession of a black

handgun with an extended magazine. Image 6 depicted Bruce MARTIN

(DOB: XX/XX/1994) in possession of a black rifle style firearm with a

drum magazine attached to it. Image 7 depicted Hosea ALEXANDER

(DOB: XX/XX/1987) (wearing an Adidas hoodie) holding up a knotted

plastic bag containing what appears to be a white substance inside.

Image 4              Image 5                 Image 6              Image 7

   

14.     The final Instagram story I observed posted by Instagram

User ID 48205jizzle was dated April 1, 2020. The story displayed

several firearms positioned on a floor throughout a room underneath an

assorted amount of money. In this video, ROBINSON moved around assorted bills with his foot and displayed several different caliber firearms underneath the money. I observed that one of the firearms on the floor had a clear extended magazine attached to it. The magazine exposed brass bullets inside. Image 8 (brightened for clarity) below, is a still shot of the Instagram story displaying the clear magazine.

<u>Image 8</u>



15.   On April 12, 2020, Instagram User ID 48205jizzle posted a series of videos to his Instagram story. In one of the videos, I observed ROBINSON in possession of a 31 round Glock magazine while stating

the following: "Yeah nigga, real Glock made 30's man, real Glock made 30's man." By watching several videos of ROBINSON talking, the voice heard in this video is ROBINSON. Image 9, below, is a still shot of the video described above.

Image 9



B.   Instagram User ID "ripdubb_ent"

16.   On April 9, 2020, I reviewed an Instagram Profile associated with Instagram User ID: "ripdubb_ent." I reviewed posted "stories," images, and videos. I compared the user of the account with the SOS image of ALEXANDER. I identified Alexander as the individual depicted in the images and videos posted from the ripdubb_ent account. Based on the captions posted from the account and the selfie-style

images and videos posted, I concluded that Alexander accessed and utilized the account. Below are two representative images posted from the ripdubb_ent account associated with ALEXANDER. See Images 10 and 11 below.

Image 10

Image 11





17.    On March 27, 2020, Instagram user ID ripdubb_ent posted a video depicting ALEXANDER holding a large quantity of money while standing on top of a gray couch in front of a wall-side mirror. I observed an orange wall similar to the walls observed in ROBINSON's Instagram story on April 1, 2020 (see Images 5, 6, and 7 above). The video is

-10-

captioned "If they got me upset they gone Die that's on gang #playthebandsxhallenge #SceTheLabel #Slowgrind." Image 12, below, is a still shot of the video posted by Instagram user ID ripdubb_ent.

Image 12



18.    On April 1, 2020, Instagram User ID ripdubb_ent posted a video displaying ALEXANDER, TARVER, ROBINSON, MARTIN and other unknown black males inside of the residence with orange walls, holding a large quantity of money and firearms. The video began with each individual inside of a kitchen. ALEXANDER, TARVER, ROBINSON, and MARTIN walked through the kitchen into a living room area with orange walls and a large projector screen. When they

walked into the living room area, the camera faced the floor of the living room area. The camera recorded approximately six to ten different caliber firearms, including, but not limited to: a black handgun with a clear extended magazine containing brass bullets and two AK47 pistols with wooden grips. While ALEXANDER, TARVER, ROBINSON and MARTIN are in the living room, they threw large amounts of money on top of the firearms, partially covering them. Below, Images 13, 14, 15, and 16 (all brightened for clarity) are from the video posted by Instagram user ID ripdubb_ent. I compared the video to the story posted by Instagram User ID 48205jizzle. Both were recorded in the same location simultaneously. Compare the clothing in Images 5, 6, and 7.

Image 13

Image 14





Image 15                    Image 16

     

19.     On April 22, 2020, Instagram User ID ripdubb_ent posted a

series of Instagram videos. In the first video, as shown in Image 17

below, the camera pointed at a gray Dodge Charger in front of two

separate residences. One of the residences was a brown brick bungalow

with a white overhang and trim. The second residence was a brown

brick bungalow with white trim and a tall pine tree in front. I conducted

a Google Maps search of the Target Premises and discovered that the

aforementioned residences are on the west side of Dresden from the

Target Premises. Images 18 and 19 are Google Map screenshots of the

residences to the west of the Target Premises. They match the

residences in Image 17 from ripdubb_ent's post.

Image 17        Image 18        Image 19

  

-14-

20.     The next video posted by Instagram User ID ripdubb_ent, depicted a large flat-screen television mounted to an orange wall. Below the television was a smaller screen that depicted security camera video of the residence. See Image 19a below. The security camera displayed an American flag in the bottom screen. See Image 19b below.

<u>Image 19a</u>                                         <u>Image 19b</u>



21.     On April 23, 2020, I conducted surveillance on the Target Premises and observed an American flag right outside of the front entry door. I also conducted a Google Maps search of the Target Premises and

observed an American Flag outside of the front door as depicted in Images 19a and 19b.

22.     Based on Images 17 through 19, the images of the guns and cash in Images 4 through 6 and 12 through 16 were taken at the Target Premises.

C.     <u>Detroit Police Reports</u>

23.     On April 16, 2020, I searched the Detroit Police Department Record Management System (RMS). I found DPD reports relevant to this investigation.

i.     <u>Detroit Police Department Report No. 170614-0215</u>

24.     On June 14, 2017, DPD gang intelligence officers served a narcotics search warrant at the Target Premises. DPD recovered a large quantity of marijuana, a digital scale, and $254.00 in United States currency.

ii.     <u>Detroit Police Report No. 1710110181</u>

25.     On October 11, 2017, DPD gang intelligence officers executed a narcotics search warrant at the Target Premises. Recovered as a result of the search warrant was a large quantity of marijuana,

$2,949.00 in United States currency later forfeited from ALEXANDER.
In addition, a Bentley Continental automobile, valued at over $100,000
and $1,014.00 from a Dejuan Brooks were forfeited.

### iii.   Detroit Police Department Gang Intelligence

26.    On April 13, 2020, I contacted a DPD gang intelligence
commanding officer present at both search warrants at the Target
Premises. The commanding officer was inside the Target Premises
during the execution of the aforementioned DPD search warrants. The
commanding officer reviewed the videos posted on April 1, 2020 by
Instagram User ID "48205jizzle" and "ripdubb_ent." The commanding
officer immediately recognized the residence and confirmed the location
as the Target Premises.

27.    A LEIN query of the Target Premises indicated that
ROBINSON was registered to the Target Premises per the Secretary of
State.

28.    I consulted with a Michigan Department of Corrections
(MDOC) Agent in regards to ROBINSON's probationary period lasting
from March 2015 to January 2019. I was advised that ROBINSON

registered his father's address of 17241 Strasburg, Detroit, with MDOC as a place of residency. According to the MDOC database, ROBINSON's assigned agent attempted to make contact with ROBINSON at that location and received negative results.

D.    Additional Surveillance

29.    During the months of April and May 2020, I conducted drive-by surveillance at the Target Premises. On several different occasions at various times of the day, I observed a black Chevrolet Impala parked in the driveway of the Target Premises. I conducted a query of ROBINSON in the DPD RMS and observed that law enforcement conducted an investigation of ROBINSON while he occupied a black Chevrolet Impala bearing the Michigan license plate of DRT0113. ROBINSON was arrested from the black Impala for an outstanding probation violation warrant out of Macomb County.

30.   On May, 4, 2019, 48205jizzle / ROBINSON posted Image 20 (below) which depicted ROBINSON and Issac Bannerman (DOB: XX/XX/1988) in front of a black Chevrolet Impala. The photograph was captioned "We ah slide on yo corner with them glow sticks like skateland #LOM #LongLiveLitho."

31.   On May 6, 2019, ROBINSON posted Image 21 (below) which depicted ROBINSON standing in front of a black Chevrolet Impala partially blocking the license plate beginning with a "D."

<u>Image 20</u>          <u>Image 21</u>

    

32.     I conducted a query of license plate DRT0113 and learned that the vehicle was not registered to ROBINSON. I know, through training and experience, that individuals who engage in criminal activity commonly register their vehicles in the name of family members or close associates in order to shield their identity from law enforcement. Furthermore, I believe, based on the aforementioned information, that the black Chevrolet Impala seen parked in the driveway of the target premises is associated to ROBINSON.

33.     On May 2, 2020 at approximately 9:35 a.m., I conducted drive-by surveillance of the Target Premises. I observed TARVER in a tan Lincoln MKX deep into the driveway of the Target Premises. After several moments, I observed TARVER pull out of the driveway, in the Lincoln MKX, and travel southbound on Dresden.

34.     On May 2, 2020 at approximately 10:40 a.m., I conducted drive-by surveillance of the Target Premises. I observed ROBINSON occupying a white KIA Optima bearing the MI/LP of ECL1102 in the driveway of the target premises. I set up fixed surveillance and observed ROBINSON leave in the white KIA Optima. I queried the

license plate in LEIN and observed that the vehicle is a rental from AVIS rental cars. Based on my training and experience, individuals who engage in narcotics trafficking commonly rent vehicles to operate their business while concealing their identity from law enforcement.

35.    Based on the aforementioned information, probable cause exists that the Target Premises is accessible to ROBINSON and that the target premises acts a location where ROBINSON, TARVER and ALEXANDER can rendezvous in order to engage in criminal acts. Based on my training, experience, and after consultation with other law enforcement officers, drug dealers often use, store, and maintain narcotics in their places of residence, in addition to other places over which they have access and control, and that they do so in order to protect their illegal narcotics and proceeds. This is also often done in an attempt to keep illicit items concealed from law enforcement and avoid potential seizures and to hamper the activities of law enforcement.

36.    Probable cause exists that a search of the Target Premises will result in, at least, the seizure of firearms and cellular phone(s).

These items will result in evidence of violation of 18 U.S.C. § 922(g)(1),

felon in possession of firearms.

## IV.   USE OF CELLULAR PHONES FOR CRIMINAL ACTIVITY

37.    A wireless telephone (or mobile telephone, or cellular

telephone) is a handheld wireless device used primarily for voice

communication through radio signals. These telephones send signals

through networks of transmitter/receivers called "cells," enabling

communication with other wireless telephones or traditional "land line"

telephones. A wireless telephone usually contains a "call log," which

records the telephone number, date, and time of calls made to and from

the phone. In addition to enabling voice communications, wireless

telephones offer a broad range of capabilities. These capabilities

include, but are not limited to: storing names and phone numbers in

electronic "address books"; sending, receiving, and storing text

messages and email; taking, sending, receiving and storing still

photographs and moving video; storing and playing back audio files;

storing dates, appointments, and other information on personal

calendars; and accessing and downloading information from the

Internet. Wireless telephones may also include global positioning

system ("GPS") technology for determining the location of the device at

the present time or the device's location at a particular time in the past.

38.    Based on my training and experience, and the investigations

of other law enforcement officers with whom I have had discussions,

individuals who possess firearms often take pictures and videos of

themselves and others with firearms. These pictures are frequently

taken with and stored on cell phones. These pictures and videos are also

frequently stored and/or posted on the public and private features of

various social media platforms, to include Facebook, Twitter, and

Instagram, among others. In this case, the Instagram User ID

48205jizzle owned by account holder ROBINSON and the Instagram

User ID ripdubb_ent owned by ALEXANDER, uploaded photographs

and videos of themselves and others in possession of firearms.

39.    Individuals who unlawfully possess firearms frequently

utilize cell phones to access the internet, email, and various social

media platforms, to include Facebook, Twitter, and Instagram, among

others, to advertise and facilitate the possession, sale, and/or purchase of firearms.

40.    Individuals who utilize various social media platforms, to include Facebook, Twitter, and Instagram, among others, often post pictures with the fruits of the criminal exploits, specifically individuals often post pictures of themselves and others with illegally obtained firearms. Furthermore, these individuals often utilize cell phones to gain access to various social media platforms.  In this instance, ROBINSON previously posted images of himself and others, in possession of firearms, to Instagram. Cameras built into cellular phones are almost always used to take photographs for social media posts. Images uploaded to social media platforms are frequently taken with cell phones and uploaded via the platform's application.

41.    Individuals who utilize cell phones to access a cellular network knowingly or unknowingly leave a GPS footprint by utilizing cellular data. Furthermore these individuals often utilize cell phones and social media platforms to post or tag themselves at various locations, as well as post or tag other individuals with them. All of the

above-referenced geographical location information can aid law enforcement in establishing a timeline, pinpoint the individual's location during criminal acts, and identify additional suspects.

42.   Cell phones have the ability to access social media platforms via the internet and/or "applications" (commonly referred to as "apps").

43.   Individuals involved in criminal conduct, specifically, drug trafficking and/or the trafficking and acquisition of firearms, use cellular phones to facilitate their criminal conduct. These individuals communicate through phone calls, text messages, photographs (sending pictures of the drugs or firearms for sale/purchase), and/or use social media to sell/obtain drugs and/or guns or to coordinate their criminal activities.

44.   Through my training and experience (both personally and professionally), I know that cell phone users normally keep their cell phones on or near their person at all times.

45.   Based on my training and experience, and the investigations of other law enforcement officers with whom I have had discussions, those involved in the drug trade often use multiple cellular telephones

to facilitate drug trafficking. Drug traffickers commonly use cellular telephones to store names, numbers, and contact information of other subjects involved with their criminal activities.

46.    Based on the information set forth herein, through my training and experience, and based on my review of the Instagram User ID's 48205 jizzle and ripdubb_ent, which contained photographs of ROBINSON, TARVER and ALEXANDER in possession of firearms on both pages, I have probable cause to believe that a cellular phone associated with ROBINSON, TARVER and/or ALEXANDER will have evidence of the illegal possession and/or acquisition of firearms.

## V.    FIREARMS

47.    Based on my training, experience, and discussions with other law enforcement officers, I know that individuals who possess firearms as felons or otherwise, store those firearms in their homes or cars, so that the firearms are easily accessible. See Image 3 where ROBINSON is in possession of a firearm. See Images 4 through 8, 12, and 14 through 16 where firearms, drugs, ammunition, and money are observed in the Target Premises.

-26-

48.     Individuals who sell drugs use firearms to protect themselves, their drugs, and the proceeds from their drug activities.

49.     Based on my training, experience, and discussions with confidential informants and veteran law enforcement officers, firearms are durable and non-perishable goods, which can be expected to remain in the individual's possession for extended periods of time. This is especially true with the individual possessing the firearm is a felon and is (1) unable to legally purchase a firearm for himself, (2) unable to have someone legally purchase a firearm for him, and (3) engaged in ongoing criminal drug activity.

## VI.   COMPUTERS, ELECTRONIC STORAGE, CELLULAR PHONES AND FORENSIC ANALYSIS

50.     As described above and in Attachment B, this application seeks permission to search for records that might be found at the Target Premises, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media such as a cellular phone. Thus, the warrant applied for would authorize the seizure of electronic storage media or,

potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

51.    For the purposes of this warrant, a storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media. A cellular phone is a type of storage medium.

52.    The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

53.    I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, in part, for the following reasons below.

54.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or

even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

55. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

56. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic

evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

57.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

58.  As further described in Attachment B, this application seeks permission to locate not only computer files on storage mediums that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the Target Premises.

59.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or

edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

60.    As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further

suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, social media accounts, call logs, other transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.

61.    Computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows

investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.

62.    For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer or storage medium may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within the computer or storage medium may indicate the owner's motive and intent to commit a crime (e.g., internet

searches indicating criminal planning), or consciousness of guilt (e.g.,
running a "wiping" program to destroy evidence on the computer or
password protecting/encrypting such evidence in an effort to conceal it
from law enforcement).

63.    A person with appropriate familiarity with how a computer
or other storage medium works can, after examining this forensic
evidence in its proper context, draw conclusions about how computers
were used, the purpose of their use, who used them, and when.

64.    The process of identifying the exact files, blocks, registry
entries, logs, or other forms of forensic evidence on a storage medium
that are necessary to draw an accurate conclusion is a dynamic process.
While it is possible to specify in advance the records to be sought,
evidence in a computer or other storage medium is not always data that
can be merely reviewed by a review team and passed along to
investigators. Whether data stored on a computer is evidence may
depend on other information stored on the computer and the application
of knowledge about how a computer behaves. Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant.

65.    Further, in finding evidence of how a computer or storage medium was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

66.    In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's or storage medium's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage

media, and to prevent the loss of the data either from accidental or intentional destruction.

67.   As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

68.   Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to

know before a search what tools or knowledge will be required to
analyze the system and its data on the Target Premises. However,
taking the storage media off-site and reviewing it in a controlled
environment will allow its examination with the proper tools and
knowledge.

69.   Records sought under this warrant could be stored in a
variety of storage media formats that may require off-site reviewing
with specialized forensic tools.

70.   Based on the foregoing, and consistent with Rule 41(e)(2)(B),
the warrant I am applying for would permit seizing, imaging, or
otherwise copying storage media that reasonably appear to contain
some or all of the evidence described in the warrant, and would
authorize a later review of the media or information consistent with the
warrant.  The later review may require techniques, including but not
limited to computer-assisted scans of the entire medium, that might
expose many parts of a hard drive to human inspection in order to
determine whether it is evidence described by the warrant.

71.    Because several people share the Target Premises as a residence, it is possible that the Target Premises will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## VII. CONCLUSION

72.     Based on my training and experience, probable cause exits that the Target Premises contains fruits, instrumentalities, and evidence of federal crimes specifically relating to violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

Respectfully submitted,

Troy Williams, Task Force Officer
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

HON. DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

Date:   May 6, 2020

**ATTACHMENT A**
**RESIDENCE TO BE SEARCHED**

The entire premises and curtilage of the residence located at 17834 Dresden, Detroit, Michigan 48205. The residence is described as a 2-story bungalow, brown brick with light brown brick acting as the trim, black security door, and the numbers "17834" affixed to the left of the door. Located on the east side of Dresden Street, south of Greiner Street, north of Gietzen Street.



## ATTACHMENT B
## LIST OF EVIDENCE TO BE SEIZED

1.     The government is entitled to seize all information that constitutes fruit, evidence, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) including, but not limited to the following matters:

     a.     Firearms, firearms parts or ammunition;

     b.     Computers or storage media used as a means to commit the violations described above, including, but not limited to, any record or electronic device capable of storing information related to the possession, sale, purchase, or distribution of firearms, including sources of the firearms, dates, places, and amounts of specific transactions;

     c.     Electronic storage devices that record surveillance videos or security cameras that capture and/or records the activity at the Target Premises. This includes, but is not limited to, recording individuals entering or exiting the premises. Also, evidence related to the use of a cellular phone to remotely access (and record) the surveillance video and/or security cameras;

     d.     Personal books and papers reflecting names, addresses, telephone numbers, and other contact identification data relating to the acquisition and/or possession of firearms or ammunition;

2

      e.     Information and items of personal property that tend to identify the persons in residence, occupancy, control or ownership of the premises that is the subject of this warrant;

      f.     Information and documents indicating travel in interstate and foreign commerce;

      g.     Information and records related to financial, banking, or credit card transactions;

      h.     Records and documents to be seized shall include computer data, cellular phones, computer hardware and hard drives, compact disks, and DVD's, peripherals, cables, software and manuals; all of which may be removed from the premises to be examined off-site under controlled conditions, to be examined by law enforcement personnel and by persons specially trained in the recovery of computer data;

      i.     As used herein, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or storage medium (such as flash memory or other media that can store data) and any photographic form.

      2.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage

3

medium that contains or in which is stored records or information that
is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.   Evidence of who used, owned, or controlled the
COMPUTER at the time the things described in this warrant were
created, edited, or deleted, such as logs, registry entries, configuration
files, saved usernames and passwords, documents, browsing history,
user profiles, email, email contacts, "chat," instant messaging logs,
photographs, and correspondence;

b.   Evidence of software that would allow others to control
the COMPUTER, such as viruses, Trojan horses, and other forms of
malicious software, as well as evidence of the presence or absence of
security software designed to detect malicious software;

c.   Evidence of the lack of such malicious software;

d.   Evidence indicating how and when the computer was
accessed or used to determine the chronological context of computer
access, use, and events relating to crime under investigation and to the
computer user;

e.   Evidence indicating the computer user's state of mind
as it relates to the crime under investigation;

f.    Evidence of the attachment to the COMPUTER of
other storage devices or similar containers for electronic evidence;

g.   Evidence of counter-forensic programs (and associated
data) that are designed to eliminate data from the COMPUTER;

4

      h.     Evidence of the times the COMPUTER was used;

      i.     Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

      j.     Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

      k.     Records of or information about Internet Protocol addresses used by the COMPUTER;

      l.     Records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

      m.     Contextual information necessary to understand the evidence described in this attachment.

      3.     As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm,

microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

4.     The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

5.     The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media. Cellular phones are a storage medium.

Telephone: (313) 226-9100

Task Force Officer:   Troy Williams          Telephone:   (313) 202-3400

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

17834 Dresden, Detroit, Michigan 48205
(more fully described in Attachment A)

)
)
)
)   Case No.
)
)
)

Case: 2:20−mc−50543
Assigned To : Friedman, Bernard A.
Assign. Date : 5/6/2020
Description: RE: SEALED MATTER
(EOB)

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

**YOU ARE COMMANDED** to execute this warrant on or before   May 20, 2020 _____   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      May 6, 2020    3:45 pm _____          _____
*Judge's signature*

City and state:      Detroit, Michigan _____          Hon. David R. Grand,  U. S. Magistrate Judge
                                                              *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____


_____
*Executing officer's signature*

_____
*Printed name and title*